```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| HARDING BRASS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ZONING BOARD OF ADJUSTMENT<br>OF THE TOWNSHIP OF<br>HAMILTON, and THE TOWNSHIP<br>OF HAMILTON,<br><br>    Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 13-6211<br>             (JEI/JS)<br><br>**OPINION** |

**APPEARANCES:**

F. MICHAEL DAILY, JR. LLC
By: F. Michael Daily, Jr., Esq.
216 Haddon Avenue, Suite 100
Westmont, New Jersey 08108
        Counsel for Plaintiff

RICHARDSON, GALELLA & AUSTERMUHL, LLC
By: Allan E. Richardson, Esq.
    Linda A. Galella, Esq.
142 Emerson Street
Woodbury, New Jersey 08096
        Counsel for Defendants Hamilton Township and its Zoning
        Board

**IRENAS**, Senior United States District Judge:

    Plaintiff Harding Brass, LLC, operates, or seeks to operate, an adult entertainment facility and juice bar in Hamilton Township.  When Harding Brass applied for a business license and repair permits in 2013, the zoning board originally denied the

1

application. In 2014, after this lawsuit was filed, Harding Brass reapplied and received a favorable decision.

Hamilton Township moves for summary judgment. The sole issue remaining in this suit is whether Hamilton Township originally denied Harding Brass' application because Harding Brass is a strip club where female performers dance "partially covered." (Pl's Ex. B, 9:21-25)[1] Harding Brass has not sustained its burden of pointing to record facts creating an issue for trial. Accordingly, the motion will be granted.

## I.

In August, 2013, Harding Brass applied to the Hamilton Zoning Board to register a business and obtain repair permits. (Pl's Ex. D) On September 23, 2013, the Board considered the application at an open meeting. What took place, and what was said, during the meeting is not in dispute; the meeting was transcribed and the entire transcript is part of the summary judgment record at Plaintiff's Exhibit B. The Board Resolution that resulted is also in the record.

---

[1] The Court exercises federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.
   Plaintiff has conceded that summary judgment is appropriate on Count 1 (review of the zoning board's decision) and Count 3 (equal protection) of the three-count complaint. *See* Opposition brief, p. 1-2. Count 2, the § 1983 First Amendment claim, remains.

2

As fully set forth in the transcript and resolution, the issue facing the Board on the night of September 23, 2013 was whether Harding Brass' use of the subject property as an adult entertainment establishment was a preexisting nonconforming use. The factual inquiry focused on whether, from July 1985 to the present, the property had been continuously used as an adult entertainment establishment.  It is undisputed that Harding Brass had the burden of proof.

Harding Brass presented the testimony of three witnesses: Timothy Granzow, a principal of Harding Brass' lessor; and two previous patrons of the property, Brian Donahue and Richard Cantoni.

Granzow testified that he had found documentation going back to 1999 that the property had been used for adult entertainment. (Pl's Ex. p. 13)  He further testified that he had no personal knowledge whether in 1982 the property "had adult entertainment in the form of dancing girls." (Id. at p. 13)

Notably, the following exchange took place between Granzow and a Board Member:

> [Granzow]:  [The property] was always, as far as I can determine from talking to people, remembering from my own recollection, [the property] was [a strip club].

>Board Member: Your recollection, and you were three years old.[2]
>
>[Granzow]: Well, in '91 I was 12 years old and I remember (indiscernible). So it was always, from what I know . . . it's been a strip club for at least since 1980.
>
>Board Member: I think that's what we need a determination in '83, '84 . . . Your evidence, I think, is not supporting it.

(Pl's Ex. B, p. 22)

Donahue testified that he visited the property once in the summer of 1982 and saw adult entertainment performances. (Pl's Ex. B, p. 29, 31) He further testified that in the 1980s and 1990s, he visited the property and saw adult entertainment but could not be more specific on when or how frequently he went: "Over the years, I would say-- I don't know if you'd want to say a couple times a year or--." (Id. at p. 32) He said he could not remember the last time he was there. (Id.)

Additional questioning by Board Members elicited that during the relevant time period, Donahue lived in Brigantine, New Jersey, (82 miles away from Hamilton Township) and Galloway, New Jersey (68 miles away); and that Donahue was friends with the applicant. (Pl's Ex. B, p. 33-35)

---

[2] Granzow testified earlier at the hearing that he "just turned 34." (Pl's Ex. B, p. 7)

Cantoni testified that, in 1981, he considered buying the property but did not because his wife did not like that the property was used for adult entertainment. (Pl's Ex. B, p. 38) He also testified that he went to the property once after March of 1983 and that there was adult entertainment at the property at that time. (Id. p. at 39) When asked the last time he had been to the property, he testified, "Oh God. I don't know. Three or four years ago." (Id. at p. 41)

Cantoni admitted that he was asked to testify at the hearing by his "friend for years" who held an ownership interest in Harding Brass. (Pl's Ex. B, p. 40)

Of the seven board members, six voted against the application and one abstained. Their reasons for their votes were quite consistent.

Board Member Tomasello stated:

> I would love to see a newspaper article, a flyer, a telephone listing something that said this type of entertainment was in there.
> We're all relying on people's faulty memories . . . .
> If I had seen one independent person or one independent document that said [that adult entertainment has] been going on there prior to '85 I would be convinced, and I wouldn't have a problem with it. But I think we're being asked to take this based on people's faulty memories.

(Pl's Ex. B, p. 84)

5

Board Member Zimmerman stated, "We have to weigh the totality of the evidence, and the only evidence that's brought in has been oral testimony from 30 years ago."  (Pl's Ex. B, p. 92)

Board Member Cain stated,

> it's still a burden of proof on the applicant. And I did listen to the witnesses.  As fuzzy as that may be to an extent. I mean they're going back to the early parts of the business . . . . There's nothing from the applicant proving that somewhere along the line that there was never a break in the continuous use.

(Pl's Ex. B, p. 94)

Board Member Choyce said,

> We have sporadic-- we have testimony that can say there was use during certain years in the early '80s, the mid-'80s.  We don't-- I don't see from 1985 to 2010 is a long time span, and I'm not seeing a lot of tangible evidence that says there wasn't a break or a change . . . I'm going to have to vote [against the application] because I just don't feel I have enough concrete information to support that there's been a continuous use.

(Pl's Ex. B, p. 95)

Board Member Strigh said, "the burden of proof is on the applicant. . . . the proof that it was a continuous use was just not there."  (Pl's Ex. B, p. 95)

Board Member Samuelsen stated, "not having a concrete timeline I think is a determining factor in this."  (Pl's Ex. B, p. 96)

Board Member Christman abstained, explaining, "I don't disagree with what has been said but . . . . There's a lot missing. . . .  I just don't see it. . . . And I can't make a decision here.  I honestly can't."  (Pl's Ex. B, p. 95)

On February 24, 2014, the Board held another hearing on the zoning application.  This time, Harding Brass presented testimony from 10 witnesses and an Atlantic City Press article in support of its application.  (Pl's Ex. E)  The application was unanimously approved.  (Id.)

## II.

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted if "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party.  *See Boyle v. Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material only if it will affect the outcome of

a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party.  *See Anderson*, 477 U.S. at 252.

### III.

There is simply no evidence in the record supporting an inference that the Board or Township acted for a reason prohibited by the First Amendment when the Board originally denied Harding Brass' application.

All of the record evidence supports only one conclusion.  The Board Members based their September 23, 2013 decision on a content-neutral reason: the insufficiency of Harding Brass' evidence concerning continuous use-- irrespective of what that "use" was.  The lack of evidence is supported by the record.  At the September hearing, Harding Brass put forth little to no evidence to account for more than a decade of time-- approximately the late '80s to 1999.  This, coupled with the potential biases and vague memories of *all* of the witnesses presented, supported the Board's decision.

Moreover, nothing in the record supports an inference that the reasons given individually by each member of the Board were pretext for a constitutionally prohibited motive.  Indeed, once

8

the asserted reason for denying the application was cured, the Board unanimously approved Harding Brass' application.

Harding Brass has failed to point to any record evidence that would lead a reasonable factfinder to conclude that the zoning board or Hamilton Township denied Harding Brass' application because Defendants disapproved of the adult entertainment that would take place on the property.  Accordingly, Defendants' Motion for Summary Judgment will be granted.

## IV.

For the reasons set forth above, Defendants' Motion for Summary Judgment will be granted in its entirety.

An appropriate Order accompanies this Opinion.


Dated:  April 23, 2015                       s/ Joseph E. Irenas
                                       **Joseph E. Irenas, S.U.S.D.J.**

9